ORDERED.

Dated: September 21, 2017

K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

WILLIAM J. KARDASH, SR.,            Case No.: 8:16-bk-05715-KRM
                                                     Chapter 11

      Debtor.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S MOTION FOR SUMMARY JUDGMENT AND SUSTAINING DEBTOR'S OBJECTION TO CLAIM**

The parties have filed competing motions for summary judgment on the Debtor's objection to the proof of claim filed by the United States of America on behalf of the Internal Revenue Service (the "United States").[1] The United States asserts that the Debtor's liability from a Tax Court judgment, for his having received about $4.3 million of fraudulent transfers from the corporate taxpayer, is equivalent to a "tax" and, therefore, the claim is entitled to priority as a tax pursuant to 11 U.S.C. § 507(a)(8)(iii). Debtor argues that the liability arose under state fraudulent transfer law ("FUFTA") and should have the status of a general unsecured claim.

---

[1] The United States' Motion for Summary Judgment (which includes a response to the Objection) is found at Doc. No. 70. Debtor's response is at Doc. No. 76, and the United States' reply is at Doc. No. 77. Debtor's Motion for Summary Judgment is found at Doc. No. 71. The United States' response is at Doc. No. 75. Debtor filed a reply at Doc. No. 78.

Summary judgment is appropriate because the parties have stipulated to all relevant facts.[2] After considering the pleadings and the arguments made by counsel, summary judgment is due to be granted in favor of the Debtor. Thus, Debtor's objection will be sustained and the United States' claim will be disallowed priority status.

## FACTUAL BACKGROUND

From 2003 to 2007, Debtor was an employee and minority shareholder (8.65%) of a now-defunct company, Florida Engineered Construction Products Corporation, d/b/a Cast-Crete ("FECP"). Debtor managed FECP's operations but he was not a "responsible person" under 26 U.S.C. § 6672.

During that period, FECP had revenues in excess of $450 million, but paid no income taxes. A later IRS audit determined that FECP owed over $120 million in taxes for those years. FECP's two controlling shareholders, John Stanton and Ralph Hughes, siphoned substantially all of the cash out of the company.[3] By 2005, FECP was insolvent.

In 2005, 2006, and 2007, Debtor received $3,562,490 in dividends on his FECP stock. He reported the dividends on his individual tax returns and paid income taxes on those dividends.

In 2010, the United States commenced an action in Tax Court against Debtor, pursuant to Section 6901(a) of the Tax Code,[4] to recover the dividends he received in 2005-2007 and bonuses he received in 2003 and 2004. Section 6901(a) provides:

> "[t]he amounts of the following liabilities shall . . . be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred . . . [including] [t]he liability, at law or in equity, of a transferee of property . . . ."

---

[2] *See* Fed. R. Civ. P. 56(a), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056. Their Stipulation of Undisputed Facts is at Doc. No. 69.

[3] *Kardash v. Comm'r*, 866 F.3d 1249, 1251 (11th Cir. 2017).

[4] 26 U.S.C. § 6901.

In 2015, the Tax Court ruled that the dividends paid to Debtor in 2005-2007 were fraudulent transfers under Florida law ("FUFTA"),[5] because they were not made in compensation for his services and FECP was either insolvent when the dividends were paid or caused to become insolvent later by reason of the dividends.[6] The dividends were found to be constructively fraudulent; actual fraud was not found.[7] Debtor was found liable for $3,562,490, the amount of the dividends he had received and interest under Internal Revenue Code § 6601 from the date of the Notice of Liability, March 3, 2010.[8] The Eleventh Circuit affirmed the Tax Court's decision.[9]

Debtor filed for protection under Chapter 11 on July 1, 2016. The United States assessed a liability for the judgment on July 28, 2016, and filed a proof of claim in this case (Claim No. 2) on September 9, 2016, in the amount of $4,376,210.94, including $4,365,810.94 as a priority claim under § 507(a)(8) of the Bankruptcy Code.[10] Debtor has objected only to the priority status of the unsecured claim.[11]

---

[5] Florida Uniform Fraudulent Transfer Act, FLA. STAT. Chapter 726 (2015).

[6] *See Kardash v. Comm'r*, 866 F.3d at 1251; *Kardash v. Comm'r*, 2015 WL 1222397, at *13, *16, 109 T.C.M. (CCH) 1234 (2015), docketed in this case as Doc. No. 64-1. Based on its findings of fact, the Tax court determined that the bonuses and the dividends paid in 2003 and 2004 were not fraudulent transfers. *Id*. at *16.

[7] *Kardash v. Comm'r*, 2015 WL 5829153, at *1, *4, 110 T.C.M. (CCH) 353 (2015); *Kardash v. Comm'r*, 2015 WL 1222397, at *10.

[8] *See Kardash v. Comm'r* April 5, 2016 order by the United States Tax Court, Docket No. 12681-10, docketed in this case as Doc. No. 69-1. The order does not provide a specific dollar amount of interest owed, and instead provides the manner in which it is to be calculated. The United States claims Debtor owes $803,320.94 of accrued interest as of the petition date. *See* Proof of Claim No. 2.

[9] *Kardash v. Comm'r*, 866 F.3d at 1251 (11th Cir. 2017).

[10] *See* Proof of Claim No. 2. Specifically, the United States claims priority under 11 U.S.C. § 507(a)(8)(iii). The priority claim consists of $3,562,490 related to the fraudulent transfers from 2005, 2006, and 2007, plus $803,320.94 in interest through the petition date. The proof of claim further asserts that $10,400 is secured by a blanket lien on Debtor's property pursuant to 26 U.S.C. §6321 and a claimed right of setoff. The secured claim is not in dispute.

[11] Doc. No. 64.

ANALYSIS

Under § 507(a)(8)(A) of the Bankruptcy Code, the allowed unsecured claims of governmental units have priority over general unsecured claims to the extent that such claims are for "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition . . . ."[12] The United States asserts that Debtor's transferee liability is the functional equivalent to a tax for purposes of § 507(a)(8)(A).[13]

But, § 6901(a) of the Tax Code does not by its terms impose a tax. The Debtor's liability to the United States arises from the Tax Court's judgment, which was premised on the legal conclusion that the dividends that Debtor had received were constructive fraudulent transfers – received for less than reasonably equivalent value while FECP was insolvent.[14] The Tax Court summarized the statutory bases for its judgment:

> "Section 6901(a)(1) is a procedural statute authorizing the assessment of transferee liability in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the transferee liability was incurred. *Section 6901(a) does not create or define a substantive liability but merely provides the Commissioner a remedy for enforcing and collecting from the transferee of the property the transferor's existing liability.*"[15]
>
> \* \* \*
>
> "Under section 6901(a) the Commissioner may establish transferee liability if a basis exists under applicable State law or State equity principles for holding the transferee liable for the transferor's debts. *Comm'r v. Stern*, 357 U.S. 39, 42-47 (1958); *Bresson v. Comm'r*, 111 T.C. 172, 179-180 (1998), *aff'd*, 213 F.3d 1173 (9th Cir. 2000); *Starnes v. Comm'r*, T.C. Memo. 2011-63. '[T]he existence and extent of liability should be determined by state law.' *Comm'r v. Stern*, 357 U.S. at 45. *Thus, State law determines the elements of liability, and section 6901 provides the remedy or procedure to be employed by the Commissioner as the*

---

[12] *See* 11 U.S.C. § 507(a)(8)(A).

[13] *See* 11 U.S.C. § 507.

[14] *Kardash v. Comm'r*, 2015 WL 1222397, at *13.

[15] *Id.* at *7 (citing *Coca-Cola Bottling Co. v. Comm'r*, 334 F.2d 875, 877 (9th Cir. 1964), *aff'g* 37 T.C. 1006 (1962); *Mysse v. Comm'r*, 57 T.C. 680, 700-701 (1972)) (emphasis added).

*means of enforcing that liability. Ginsberg v. Comm'r*, 305 F.2d 664, 667 (2d Cir. 1962), *aff'g* 35 T.C. 1148 (1961)."[16]

In upholding the Tax Court's judgment, the Eleventh Circuit also affirmed the Tax Court's application of Florida law:

"The question for us, then, is what source of law provides the definition of substantive liability in this case? The text of the statute provides a helpful clue. § 6901 discusses the liability of a transferee in terms of "at law or in equity." 26 U.S.C. § 6901(a)(1)(A). As *Stern* discussed, this statute was passed against a backdrop of various legal and equitable remedies that the Commissioner could use to collect against a transferee – remedies that the Court made clear that § 6901, as a purely procedural statute, left unchanged."[17]

In 1994, the Eleventh Circuit ruled, in *Baptiste v. Commissioner of Internal Revenue*, that "any liability to which section 6901(a) applies is not a tax liability, but rather an independent liability."[18] Baptiste had received life insurance proceeds upon the death of his father.[19] But, there was an estate tax deficiency.[20] Thus, the Tax Court found Baptiste liable to repay the insurance proceeds he had received,[21] plus interest.[22] In reviewing the Tax Court's decision, the Eleventh

---

[16] *Kardash v. Comm'r*, 2015 WL 1222397, at *7 (emphasis added).

[17] *Kardash v. Comm'r*, 866 F.3d 1249, 1254 (11th Cir. 2017). In *Commissioner v. Stern*, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958), the Supreme Court analyzed transferee liability (via 26 U.S.C.A. § 311, the precursor to § 6901(a)). *Stern* involved a widow's appeal of an assessment made against her for her deceased husband's unpaid income tax deficiencies because she had received proceeds from his life insurance policy that exceeded that deficiency. *Id*. at 40. The Court recognized that state law, not federal law, governs whether a liability exists against a transferee. *Id.* at 42. "[T]he existence and extent of a liability should be determined by state law." *Id*. at 45. The Court said that § 311 was "purely a procedural statute" that "neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes." *Id*. at 42, 44. Since the underlying liability was determined by state law, "[w]hat is a good transfer in one jurisdiction might not be so in another." *Id*. at 45. The United States' substantive rights are "precisely those which other creditors would have under [state] law." *Id*. at 47.

[18] *Baptiste v. Comm'r*, 29 F.3d 1533, 1541 (11th Cir. 1994).

[19] *Id*. at 1535.

[20] *Id*.

[21] *Id*. at 1535, 1537.

[22] *Id*. at 1541.

5

Circuit reasoned that while § 6901(a) is a purely procedural statute, Baptiste was also subject to 26 U.S.C. § 6324(a)(2), which provided a separate liability for estates' transferees:[23]

> "The language of section 6324(a)(2) does not provide that the liability of a transferee is a tax liability. Rather, it imposes an obligation on the transferee to satisfy the underlying tax liability of the transferor estate. *Because the estate's obligation is one in the nature of a tax does not mean the transferee also has a tax liability.*"[24]

> "Were transferee liability under section 6324(a)(2) a tax liability, there would be no need for the authorizations and provisions of section 6901(a). In fact, that section would be superfluous and wholly unnecessary, a statutory construction that is both disfavored and unlikely. Accordingly, any liability to which section 6901(a) applies is not a tax liability, but rather an independent liability."[25]

> "*Baptiste's liability under section 6324(a)(2), therefore, is not a tax liability, but is an independent personal obligation which, pursuant to section 6901(a), may be collected in a manner similar to that employed in collecting tax liabilities*."[26]

Faced with a similar issue, this court (per Judge Baynes) likewise determined that transferee liability is not a tax under § 507 of the Bankruptcy Code.[27] Citing *Baptiste* as binding precedent, the Court opined that a determination of transferee liability is "separate and independent of the underlying tax obligation owed by the [transferor]."[28] Not being a tax, the transferee liability was not entitled to priority under § 507(a)(8), and is "[a]t best . . . a general unsecured claim, assuming a timely proof of claim."[29]

---

[23] *Baptiste v. Comm'r*, 29 F.3d at 1538.

[24] *Id*. at 1541 (emphasis added).

[25] *Id*.

[26] *Id*. at 1542 (emphasis added).

[27] *In re Pert*, 201 B.R. 316, 320 (Bankr. M.D. Fla. 1996).

[28] *Id*.

[29] *Id*. at 320.

The above decisions control the outcome here. Debtor's liability is not a tax, but an independent financial obligation, arising under state law, to repay the amount of the dividends he received in 2005-2007.

The Court has considered, but is not persuaded to apply, the cases cited by the United States, particularly the Tenth Circuit's decision in *McKowen v. Internal Revenue Service*.[30] In that case, the debtor had dismantled his business after it failed to pay taxes or file a return; then, he had all of the business assets transferred to himself.[31] The IRS assessed the debtor for the amount of the asset transfer, under 26 U.S.C. § 6901(a).[32] The debtor reopened his prior Chapter 7 case to determine whether that liability had been discharged.[33] On appeal, the Tenth Circuit decided that the transferee liability was equivalent to a tax, under § 6901(a), which provides that transferee liability should be collected "in the same manner and subject to the same provisions and limitations as in the case of taxes with respect to which the liabilities were incurred."[34]

The rationale of *McKowen* is in direct conflict with the Eleventh Circuit's ruling in *Baptiste*, which is binding on this Court. *McKowen* is also distinguishable, because the transferee, unlike Debtor in this case, was the sole and controlling owner of the taxpayer corporation.[35]

---

[30] 370 F.3d 1023 (10th Cir. 2004). The *McKowen* Court analyzed whether a debt arising from transferee liability for unpaid income tax owed by the transferor corporation is discharged by the transferee's subsequent bankruptcy. *Id*. at 1025.

[31] *Id*. He included net operating loss carryforwards of the business on his personal tax return; he then filed for Chapter 7 and received a discharge. *Id*.

[32] *Id*. at 1024-25.

[33] *Id*. at 1025.

[34] *Id*. at 1026, 1027.

[35] *Id*. at 1025.

The United States also asserts that a "functional approach" is required to determine whether any liability is a tax, for purposes of § 507(a)(8)(A) of the Bankruptcy Code. The United States relies on *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, where the Supreme Court analyzed whether an exaction of 10% under 26 U.S.C. §4971(a) – triggered by an employer's failure to make required minimum funding contributions to its pension plans – was an "excise tax" entitled to seventh priority under § 507(a)(7)(E) of the Bankruptcy Code.[36]

The Supreme Court relied on its established test: "a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government."[37] The Court examined the nature of the 10% exaction, which the statute labeled as a "tax," but found its purpose to be penal, arising only on an employer's failure to timely correct a minimum funding deficiency.[38] The Supreme Court therefore concluded that the assessment was not a tax, but only a general unsecured claim.[39]

*Reorganized CF & I Fabricators* does not support the United States' central proposition here – that this Court is required to read § 6901(a) of the Tax Code as equating any collections arising from another party's unpaid tax to be a tax itself. Here, Debtor's liability arises solely under FUFTA and is not a financial burden for the purpose of supporting the Government. Under FUFTA, any creditor whose collection of unpaid debt is frustrated by a fraudulent transfer could seek the same recovery that the United States obtained in the Tax Court. If another creditor had pursued the Debtor for recovery of the dividends as fraudulent transfers, his liability would extend

---

[36] 518 U.S. 213, 215-16, 116 S.Ct. 2106, 2109 (1996).

[37] *Id*. at 224, quoting *N.J. v. Anderson*, 203 U.S. 483, 492, 27 S.Ct. 137, 140 (1906).

[38] *Id*. at 224-27.

[39] *Id*. at 225, 226.

to that party, as well.[40]  If FECP had become a debtor in bankruptcy, the FUFTA claim would have become an asset of the bankruptcy estate.[41]

The obligation is also determined by the transferor's capital structure and the timing of the transfer: if the dividends had been paid when FECP was solvent Debtor would have no liability, regardless of whether FECP's taxes remained unpaid.  In this case, § 6901(a) provides a collection procedure to recover a debt arising under state law.  It does not establish a tax owed exclusively to the United States.

Section 507(a)(8) applies only to taxes "on or measured by income or gross receipts."  But, transferee liability is measured by the value or amount of property transferred, not income of the taxpayer transferor.[42]  Debtor was never liable for the $120 million of taxes that FECP owed (an amount measured by the income of FECP).  His liability is limited to the dividends that the Tax Court considered to be constructively fraudulent transfers under Florida law.

The Bankruptcy Code is premised on equal distribution among creditors, unless the contrary is clearly stated.[43]  Accordingly, the unsecured claims that are given priority under the

---

[40] This is true even if the IRS had itself been paid, as long as FECP was deemed insolvent at the time of the transfers.

[41] *See Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708-709 (7th Cir. 1994) ("[T]he right to recoup a fraudulent transfer, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way."); *Bond Safeguard Ins. Co. v. Ward*, 2009 WL 10670758, at *2 (M.D. Fla. Aug. 4, 2009) ("[W]hile creditors have the right to recoup fraudulent transfers outside of bankruptcy, that right becomes property of the estate once a bankruptcy is under way."); *In re C.D. Jones & Co., Inc.*, 482 B.R. 449, 458 (Bankr. N.D. Fla. 2012) ("This Court agrees that creditors' fraudulent transfer claims belong to the Trustee under the strong-arm powers of Section 544 and are property of the estate once the case is filed."); *In re Zwirn*, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007) (fraudulent transfer claims "are property of the estate as of the petition date").

[42] *See U.S. v. Westley*, 7 F. App'x 393, 398 (6th Cir. 2001); *U.S. v. Floersch*, 276 F.2d 714, 717 (10th Cir. 1960); *Comm'r v. Henderson's Estate*, 147 F.2d 619, 620-21 (5th Cir. 1945).

[43] *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 655, 126 S.Ct. 2105, 2109 (2006) ("[P]referential treatment of a class of creditors is in order only when clearly authorized by Congress."). "Every claim granted priority status reduces the funds available to general unsecured creditors and may diminish the recovery of other claimants qualifying for equal or lesser priorities." *Id*. at 667.

Bankruptcy Code are to be narrowly construed.[44] The burden of proof to establish priority in this case falls on the United States.[45] Moreover, the Court must look at the statute's plain meaning when interpreting the Code.[46]

Section 507(a)(8) states that a claim is entitled to priority if it is for "a tax on or measured by income or gross receipts."[47] It does not state that claims of governmental units *derived* from taxes owed by others are entitled to priority.[48] Section 6901(a) states that transferee liability should be collected *in the same manner* "as in the case of the taxes," not that such liabilities *are* taxes. The Eleventh Circuit has ruled that § 6901(a) transferee liability is not a tax; therefore, Debtor's transferee liability is not entitled to priority.

## Conclusion

Transferee liability pursuant to § 6901(a) is not a tax. Accordingly, § 6901(a) transferee liability is not entitled to priority under § 507(a)(8), and is, at most, a general unsecured claim. Therefore, it is

---

[44] *Howard Delivery Service*, 547 U.S. at 667. "Any doubt concerning the appropriate characterization . . . is best resolved in accord with the Bankruptcy Code's equal distribution aim." *Id.* at 668. *See Nathanson v. NLRB*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952) ("The theme of the Bankruptcy Act is 'equality of distribution,' and if one claimant is to be preferred over others, the purpose should be clear from the statute.") (internal citations omitted).

[45] *In re Bradford*, 534 B.R. 839, 842 (Bankr. M.D. Ga. 2015); *See In re Firearms Imp. & Exp. Corp. v. United Capitol Ins. Co. (In re Firearms Imp. & Exp. Corp.)*, 131 B.R. 1009, 1015 (Bankr. S.D. Fla. 1991) (collecting burden of proof cases in relation to administrative expense priority).

[46] *In re Kipnis*, 555 B.R. 877, 882 (Bankr. S.D. Fla. 2016). Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). A court should only deviate from the plain language when following the unambiguous language would produce a result demonstrably contrary to the intent of the drafters. *Id.* at 242.

[47] *See* § 507(a)(8).

[48] *Id.* It is also significant that there is an absence of any explicit connector between §§ 507(a)(8) and 6901(a) establishing transferee liability as a "tax". *See Reorganized CF & I Fabricators*, 518 U.S. at 220 (determining that the absence of any "explicit connector" between §§ 507(a)(7)(E) (now 507(a)(8)(E)) and 4971 was significant in denying priority for a § 4971 claim).

**ORDERED that:**

1. Debtor's Motion for Summary Judgment (Doc. No. 71) is hereby GRANTED;

2. the United States' Motion for Summary Judgment (Doc. No. 70) is hereby DENIED; and

3. Debtor's Objection to Claim No. 2 (Doc. No. 64) is hereby SUSTAINED and the unsecured portion of the United States' claim (Claim No. 2) is denied priority status in this bankruptcy case, and shall be allowed as a general unsecured claim in the amount of $4,365,810.94.

Attorney Alberto Gomez is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.